UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DOLEN GLENN, )
 )
        Petitioner, )
 )
        v. ) No. 2:17-cv-00576-JMS-MJD
 )
RICHARD BROWN, )
 )
        Respondent. )

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Dolen Glenn for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. WVD 17-06-0265. For the reasons explained in this Entry, Mr. Glenn's habeas petition must be **denied**.

    **A.**    **Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

The charges against Mr. Glenn arose out of an investigation into materials he was attempting to mail out of the facility and books found in his cell. Some of his evidence requests were denied and he was found guilty of unauthorized possession of offensive materials.

#### 1. Initiation of the Investigation

On June 14, 2017, Mr. Glenn attempted to send four books out through the prison mail system. A case manager noticed that one of the books, titled *Michael Jackson's Dangerous Liaisons*, was on the Indiana Department of Correction's (DOC) list of prohibited books. After noting that the books each appeared to contain references to pedophilia, the case manager confiscated the books and sent them to the Office of Investigations and Intelligence (OII), which directed the case manager to have Mr. Glenn's cell searched for any other offensive books. During the search, prison officials found and confiscated several more books, including *Boys Speak Out on Man/Boy Love*, published by the North American Man/Boy Love Association (NAMBLA). This publication "contained actual letters and poems written by minors, many as young as 10 years old, about their sexual experiences with adult males." Dkt. 23-2. Although Mr. Glenn denied ever reading the book, he admitted that all 11 of the confiscated books were his.

#### 2. The Conduct Report

After concluding the investigation, OII Investigator Carpenter wrote a conduct report in case WVD 17-06-0265 charging Mr. Glenn with offense B-246, possession of offensive material. The conduct report states:

> On 6/14/2017 11 books were delivered to me, Investigator Steve Carpenter by Casework Manager L. Molter. Mrs. Molter requested that an investigation be opened into the content of the books. The books were confiscated from Offender Dolen Glenn # 860216. Upon completion of the investigation (see attached report

> of investigation), it was determined that Offender Glenn was in direct violation of possession of offensive materials (B-246).

Dkt. 23-1. On June 30, 2017, the screening officer notified Mr. Glenn of the charge of possession of offensive materials and served him with a copy of the conduct report, and a copy of the notice of disciplinary hearing (Screening Report). Mr. Glenn pleaded not guilty and requested a lay advocate, and one was later appointed. The screening officer verified with mental health staff that Mr. Glenn's conduct was unrelated to any mental illness.

Mr. Glenn was charged with and convicted of offense B-246, which prohibits "[u]nauthorized possession . . . of any symbol, paraphernalia, photograph, or any other item . . . *prohibited by the Department of Correction policies, procedures or rules* or which is offensive based upon an individual's gender, race, religion, ethnic or personal background . . . ." Adult Disciplinary Process Appendix I: Offenses, at 8 (June 1, 2015) (emphasis added), available at www.in.gov/idoc/3265.htm (visited August 24, 2018).

Prohibited property includes printed material that "threatens the security of the public, facility, or program." Offender Correspondence, IDOC Policy & Administrative Procedures No. 02-01-103, § XIX, at 20 (Sept. 1, 2015), available at www.in.gov/idoc/3265.htm (visited August 24, 2018). Examples of prohibited printed materials are those "[e]ncouraging or instructing in the commission of criminal activity," *id.* at § XIX(F), at 21, and those "[c]ontaining sexually explicit material which by its nature or content poses a threat to the security, good order or discipline of the facility or facilitates criminal activity," *id.* at § XIX(H), at 22. Although written material generally does not qualify as "sexually explicit," printed material "with a sexual content" is "reviewed on a case by case basis and is subject to exclusion if it poses a threat to the security or good order of the facility or facilitate[s] criminal activity." *Id.* For example, printed materials

with written descriptions of "[s]exual conduct or sexual acts that are in violation of state or federal statutes (e.g. rape, *child molesting or exploitation*, vicarious sexual gratification, sexual battery, incest)" are prohibited. *Id.*

### 3. Mr. Glenn's Requested Evidence

In anticipation of the hearing, at screening and over the next several days, Mr. Glenn requested the following witnesses:

| Witness | Expected Testimony/Questions |
| --- | --- |
| Timothy Blazier (Mr. Glenn's cellmate) | Mr. Glenn frequently receives books in the mail |
| Jay Edson Publisher | The books don't contain sexually explicit material or nudity |
| Mrs. Watkins (Mailroom Worker) | The number of books that come through the mailroom and whether she sees all of them |
| Insider's Bookstore and Every Farthing Publications | Ships books into the facility |
| FBI Headquarters | Whether the FBI is investigating NAMBLA and whether NAMBLA's publications contain offensive materials that violate the law |
| ACLU Attorney Ken Falk | The books don't contain offensive materials |
| Officer O'Flannery | That he was denied witnesses and evidence |

Mr. Glenn also requested the following documentary evidence:

- Select pages of the DOC's policy on offender correspondence (Policy No. 02-01-103);

- Select pages of the DOC's policy on offender personal property (Policy No. 02-01-101);

- Select pages of DOC's Policy No. 00-01-103;

- Select pages of the DOC's policy on information and standards of conduct for staff (Policy No. 04-03-103);

- A letter from Insider Books;

- A copy of an administrative investigation notice;

- A copy of the audio/video of his interview during the OII investigation;

- A voice stress test; and

The Disciplinary Hearing Board (DHB) granted some of Mr. Glenn's evidentiary requests but denied most. His cellmate, Mr. Blazier, provided a statement that Mr. Glenn "get[s] mail all the time." Watkins had provided an earlier statement to the effect that *Boys Speak Out on Man/Boy Love* had not, to the best of her knowledge, been sent to Mr. Glenn through the mailroom. The DHB also provided Mr. Glenn with the Department policies he requested. But the DHB denied Mr. Glenn's requests for a letter from Insider's Books, a statement from Jay Edson Publisher, a copy of the notice of administrative investigation, a copy of the audio or video of his OII interview, and a voice stress test. Later, the Disciplinary Hearing Officer (DHO) denied his witness requests for Insider's Bookstore, the FBI, and Mr. Falk as untimely, apparently because Mr. Glenn had not requested them during his screening.

      4. The Disciplinary Hearing

On July 11, 2017, DHO Zimmerman held a disciplinary hearing in case WVD-17-06-0265. Mr. Glenn pleaded not guilty and submitted letters from Insider's Bookstore, dated 2014 and 2016, an invoice from Insider's Bookstore for *Michael Jackson's Dangerous Liaisons*, and a three-page written statement. Mr. Glenn's statement mostly included restatements of DOC policies concerning the confiscation of evidence, though he also defended the books as supporting "the political and ethical views of the writer" and not offensive material. He claimed that he was simply trying to learn and could not be guilty of possessing offensive materials since

prison employees let the books into the facility. Mr. Glenn also requested a continuance to obtain additional statements, but the DHO denied that request.

The DHO found Mr. Glenn guilty of offense B-246, possession of offensive materials, based on staff reports, Mr. Glenn's written statement, Watkins's statement, case worker Molter's statement, the investigation report, the confiscation slips, the photos of book covers and excerpts, and the text of prison policies that Mr. Glenn had requested. The DHO imposed the following sanctions: a written reprimand, a 30-day loss of phone privileges, and a 90-day loss of earned good-time credit.

On July 20, 2017, Mr. Glenn appealed to the facility head, who denied his appeal on July 24, 2017. Mr. Glenn subsequently appealed to the Appeal Review Officer for the DOC, who denied the appeal on August 31, 2017. Mr. Glenn then filed this petition for a writ of habeas corpus.

**C. Analysis**

Mr. Glenn challenges the disciplinary action against him arguing that he was denied witnesses and evidence, a continuance, an impartial decision-maker, and the opportunity to cross-examine witnesses. He also argues that his First Amendment rights and his basic human rights were denied.

1. Denial of Witnesses

Mr. Glenn claims that the hearing officer violated his rights by denying a number of witnesses.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie*, 344 F.3d

at 678 (citing *Wolff*, 418 U.S. at 566). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Each of the witness requests is discussed below.

Mr. Glenn requested Jay Edson Publishing, Every Farthing Publishing, and Ken Falk as witnesses because he believed they would testify that the materials at issue were not sexually explicit or offensive. Similarly, Mr. Glenn asked to question "the FBI" regarding whether it was investigating NAMBLA and whether its materials violate the law. Mr. Glenn also sought testimony from Insiders Bookstore that the bookstore frequently ships books, and from his cellmate that Mr. Glenn frequently receives books.

Mr. Glenn apparently sought to present these witnesses to support his contention that the materials at issue were not offensive. But Mr. Glenn was charged with possessing offensive material in violation of express DOC policy, which clearly lists materials that describe criminal sexual conduct as prohibited. The opinions of the publisher or of Ken Falk regarding whether the materials are offensive is irrelevant to the charge. Similarly, it is irrelevant whether or not the FBI is investigating the publisher, whether a particular bookstore ships books to the prison, or whether Mr. Glenn frequently receives books. Accordingly, the denial of these witnesses did not violate his rights. *See Pannell*, 306 F.3d at 503.

Mr. Glenn also requested testimony from mailroom worker Mrs. Watkins. He further asserts that he should have been provided with a statement from Insiders Bookstore to show that the bookstore frequently ships books to the prison. Mr. Glenn can be understood to argue that because he received the book through the mailroom and because this bookstore ships books to the prison, he was authorized to possess the books, and that testimony from Mrs. Watkins, the

7

bookstore, or from anyone else would have bolstered this proposition. But even if Mr. Glenn received this book through the mailroom and it passed or slipped through mailroom screening procedures, this does not mean that his possession of it was authorized. The DOC policy governing prohibited property states that "printed matter shall be inspected and may be excluded if the matter is contraband or prohibited property." Offender Correspondence, IDOC Policy & Administrative Procedures No. 02-01-103, § XIX, at 20 (Sept. 1, 2015), available at www.in.gov/idoc/3265.htm (visited August 24, 2018). This policy does not contemplate that a mailroom worker will definitely exclude all prohibited materials or that a mailroom worker has the final say on whether materials are prohibited or not. This evidence, too, then was irrelevant and unnecessary. *See Pannell*, 306 F.3d at 503.

Mr. Glenn also challenges the denial of his request to have Officer O'Flannery as a witness. He states that Officer O'Flannery would testify that the hearing officer did deny him witnesses, evidence, and time to meet with his lay advocate. But whether or not Officer O'Flannery would have testified that Mr. Glenn's evidence and witness requests were improperly denied is irrelevant to the charge against him. *See id*. The denial of this witness also did not violate his due process rights.

2. Denial of evidence[1]

Mr. Glenn also challenges the denial of some of his requested physical evidence.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d

---

[1] Some of Mr. Glenn's evidence and witness requests were denied as untimely. But, as discussed, none of the evidence that was denied is relevant to the question of whether Mr. Glenn possessed the materials in violation of DOC policy. Accordingly, the Court will not address whether Mr. Glenn's requests were timely or not.

841, 847 (7th Cir. 2011) (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Mr. Glenn challenges the denial of his request for a voice stress test. But like many other of Mr. Glenn's evidence requests, a voice stress test would not have been relevant to whether Mr. Glenn possessed unauthorized property. In addition, prison officials are not required to create evidence that does not exist. *See Manley v. Butts*, 699 Fed. Appx. 574, *2 (7th Cir. 2017). There was therefore no error in denying the stress test.

Mr. Glenn also argues that all of the books at issue should have been admitted in their entirety. But one page of NAMBLA's *Boys Speak Out on Man/Boy Love* was submitted, and that passage contained a letter from a 12-year-old boy describing his sexual relationship with a 36-year-old man in a positive light. This was sufficient to support the charge against Mr. Glenn and further review of the books in his possession would not have rendered that page inoffensive. These materials therefore would not have been exculpatory. *Jones*, 637 F.3d at 847. And the presentation of additional materials was unnecessary. *See Pannell*, 306 F.3d at 503

Mr. Glenn also argues that he was improperly denied proof of chain of custody and the confiscation slip. He says, contrary to the statement in the Hearing Report, he was not provided with these documents. He states that the misstatement on the Hearing Report is a violation of DOC policy. To the extent that Mr. Glenn argues that he was not provided proof of the chain of custody or the confiscation slip, he has not demonstrated that this denial violated his due process rights. He does not argue that the DHO did not consider this evidence or that it was exculpatory.

9

*Jones*, 637 F.3d at 847. In fact, Mr. Glenn never denies that he possessed the materials at issue in this case. Further, to the extent Mr. Glenn contends that the DHO violated DOC policy, prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, do not form a basis for habeas relief. *See Keller v. Donahue*, 271 Fed. Appx. 531, 532 (7th Cir. 2008); *Rivera v. Davis*, 50 Fed. Appx. 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas review.").

### 3. Impartial Decision-maker

Mr. Glenn also contends that his hearing officer was not impartial.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high." *Piggie*, *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).. Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

10

Mr. Glenn argues that the hearing officer was not impartial because she denied his request for a continuance and witness and evidence requests. But there is no evidence that the hearing officer was involved in the investigation of the charges and the denial of Mr. Glenn's witness and evidence requests is not sufficient to show she was not impartial. Mr. Glenn is therefore not entitled to relief on this basis.

### 4. Denial of a Continuance

Mr. Glenn also argues that he was denied a continuance in violation of DOC policy. But due process requires only 24-hours written notice of the hearing. *Wolff*, 418 U.S. at 564. Further, even if the request for a continuance violated DOC policy, this does not amount to a due process violation *See Keller*, 271 Fed. Appx. at 532.

### 5. Sufficiency of the Evidence

Mr. Glenn next challenges the sufficiency of the evidence to find him guilty.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

As explained above, Mr. Glenn was charged with "[u]nauthorized possession . . . of any symbol, paraphernalia, photograph, or any other item . . . *prohibited by the Department of Correction policies, procedures or rules* or which is offensive based upon an individual's gender, race, religion, ethnic or personal background . . . ." There is no dispute that Mr. Glenn possessed the materials at issue. They were found in his cell and he does not deny possessing them. He argues however, that the evidence is insufficient to support a conclusion that he was not authorized to possess them or that the materials were prohibited by the DOC.

Mr. Glenn argues that he was authorized to possess the materials because he received them through the mail and they were therefore presumably reviewed and deemed acceptable by mailroom workers. But, as the Court has already explained, the DOC policy governing prohibited items, which states such items "may" be excluded, does not contemplate that mailroom personnel will have the final authority to say whether an item is prohibited or not. Mr. Glenn points to no other policy suggesting that they do. In other words, even if Mr. Glenn received the items through the mail and the mailroom workers reviewing his mail did not determine that the items were prohibited, this does not mean that the items were authorized.

Mr. Glenn also argues that the items were not in fact prohibited by DOC policy. The respondent argues that at least one of the items in Mr. Glenn's possession, the NAMBLA book, *Boys Speak Out on Man/Boy Love*, is offensive according to DOC rules because it contains letters written by minors about their sexual experiences with adult males. While the DOC policy generally permits sexually explicit written materials, written depictions of "[s]exual conduct or sexual acts that are in violation of state or federal statutes (e.g. rape, child molesting or exploitation, vicarious sexual gratification, sexual battery, incest)" are prohibited. Whether or not

all of the books Mr. Glenn possessed contained offensive material does not change the "some evidence" analysis. The fact that he possessed one book that did is sufficient to support his disciplinary conviction. Mr. Glenn also argues that "IDOC staff used their own personal objections to the subject and authors point of views." Dkt. 2. But, as this Court has found, the material at issue – which contained an account of a sexual encounter between a young boy and an adult male – fell explicitly within the DOC's definition of prohibited property. Mr. Glenn's contention that the hearing officer allowed her own personal opinions to color her decision amounts to a request that the Court reweigh the evidence, which it cannot do. In short, Mr. Glenn has failed to show that the evidence was insufficient to support his disciplinary conviction.

      6. First Amendment

Mr. Glenn also argues that the disciplinary action violated his First Amendment right to free expression.

The Supreme Court has explained that any restriction on a prisoner's First Amendment rights need only be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). While the courts must defer to prison officials' policy-making expertise, the reasonableness of their regulation depends on: (1) whether there is a valid, rational connection to a legitimate governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate, (3) the impact an accommodation of the asserted right would have on the guards and other inmates, and (4) whether there are obvious alternatives to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). The burden is on the prisoner to disprove the validity of the regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

First, the respondent argues that the limitation on the materials at issue supports the legitimate governmental interest in maintaining security and promoting rehabilitation. In upholding the restriction on the receipt of certain publications in prison, the Supreme Court held in *Thornburgh v. Abbott* that protecting prison security is "'central to all other corrections goals.'" 490 U.S. 401, 415 (1989) (quoting *Pell v. Procunier,* 417 U.S. 817, 823 (1974)). Prison officials are afforded considerable deference in making determinations on how to serve their goals. *Abbott*, 490 U.S. at 416. The respondent has presented evidence that the prohibition on publications encouraging criminal activities and on publications describing sex offenses against children logically and reasonably serves those goals. Dkt. 23-16; Dkt. 23-17. Every "facility promotes a culture where offenders feel safe to live and staff feel safe to work," and allowing publications that promote criminal activity tends to increase violence and thus substantially undermines those efforts. Dkt. 23-17. Forbidding materials that encourage or describe child molesting also promotes rehabilitation, or at least removes obstacles to rehabilitation. Dkt. 23-17.

The second *Turner* factor asks courts to consider whether the prison regulation offers inmates alternative means of exercising the right at issue. 482 U.S. at 90. The *Turner* Court held that it was sufficient if other means of expression remained available. 482 U.S. at 90. That is the case here. The restriction on possession of the materials at issue in this case does not limit other communications by inmates.

The third factor is the impact that accommodation of the asserted constitutional right will have on others in the prison including officers and other inmates. *Turner*, 482 U.S. at 90. Like the publications excluded in *Abbott*, the materials at issue in this case have been found to be potentially detrimental to order and security. 490 U.S. at 418. This factor is therefore satisfied.

Finally, *Turner* requires courts to consider "the existence of obvious, easy alternatives" to the regulation. 482 U.S. at 490-91. But Mr. Glenn has established no obvious, easy alternative to the restriction here.

In short, the restriction on the possession of materials that describe sexual activity with a minor does not violate Mr. Glenn's First Amendment rights and he is therefore not entitled to habeas relief on this basis.

### 7. Human Rights

Finally, Mr. Glenn argues that the disciplinary action violated the Universal Declaration on Human rights. But this agreement does not have binding effect in federal court and he therefore is not entitled to relief based on it. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).

**D.  Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Glenn to the relief he seeks. Accordingly, Mr. Glenn's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 9/7/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DOLEN GLENN
860216
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Aaron T. Craft
INDIANA ATTORNEY GENERAL
aaron.craft@atg.in.gov